**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| **RODNEY M. SKONIECZNY**, individually and on behalf of all others similarly situated, | ) | Case No. 2:25-cv-00384-JEM |
| Plaintiff | ) | |
| vs. | ) | **FLSA COLLECTIVE ACTION COMPLAINT** |
| **NORTHERN INDIANA PUBLIC SERVICE CO., LLC d/b/a NIPSCO** | ) | |
| Defendant | | |

***PLAINTIFF'S FIRST AMENDED FLSA COLLECTIVE ACTION COMPLAINT FOR DAMAGES***

Plaintiff Rodney M. Skonieczny ("Skonieczny" or "Plaintiff"), individually and on behalf of all others similarly situated, for his Complaint against Defendant Northern Indiana Public Service Co., LLC d/b/a NIPSCO ("Defendant" or "NIPSCO"), states and alleges as follows:

## INTRODUCTION

1. This case challenges policies and practices of Defendant that violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*

2. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. §216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and on behalf of herself or themselves and other employees similarly situated." Plaintiff brings this case individually and on behalf of other "similarly situated" persons who may join this case pursuant to §216(b) (the "Opt-Ins").

**JURISDICTION AND VENUE**

3. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

4. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendant employed Plaintiff in this District and Division and because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District and Division.

**PARTIES**

5. Plaintiff Skonieczny is an adult individual residing in LaPorte, LaPorte County, Indiana. Plaintiff Skonieczny was employed by Defendant as a station operator in and around the NIPSCO Wheatfield Station in Jasper County, Indiana area for almost ten (10) years until Defendant involuntarily terminated Skonieczny's employment in November 2023.

6. Within the three years preceding the filing of this Action, Plaintiff was employed by Defendant as a non-exempt employee who was paid on an hourly basis.

7. At all relevant times, Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e).

8. At all relevant times, Defendant was an employer within the meaning of 29 U.S.C. § 203(d).

9. At all relevant times, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

10. At all relevant times, Plaintiff was an employee engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

11. Plaintiff's written Consent to Join this Action was filed with his original Complaint on August 20, 2025.

## FACTUAL ALLEGATIONS

12. Defendant is headquartered in Merrillville, Lake County, Indiana. On its website, NIPSCO describes itself as serving 900,000 natural gas customers and 500,000 electric customers across the northern third of Indiana. It goes on to describe itself as the largest natural gas distribution company and the second largest electric distribution company in the state.

### Unpaid Shift Beginning Activities

13. All of Plaintiff's and his similarly situated coworkers' compensable work time should be ascertainable, as dates and times of work at Defendant's power stations was at least recorded on a badge swipe device when employees entered the power station. Based upon information and belief, however, Plaintiff believes Defendant only paid employees wages based upon officially scheduled shift hours.[1] While all recorded, compensable work hours should have been paid on a continuous work day basis, Defendant ignored employee badge swipes in and out of work, and instead paid only officially scheduled hours of work. Defendant did not pay wages for all compensable and recorded work time.

14. Plaintiff and his similarly situated coworkers are and were common victims of Defendant's compensation scheme whereby it illegally and impermissibly paid only officially scheduled hours of work and, in so doing, failed to pay Plaintiff and all similarly situated coworkers for significant compensable work hours.

15. To provide specific examples, Plaintiff and his similarly situated coworkers all had employee lockers. After swiping a badge to enter a power plant, Plaintiff and all similar employees had to go to a locker area and change into significant amount of safety clothing and protective gear. Plaintiff is not, however, pursuing any claims in this action related to clothes

---

[1] Employees would turn in time sheets showing hours, but NIPSCO supervisors would change the time sheets. Moreover, employees' time sheets historically only list scheduled, not actual, hours of work.

changing and washing time. Plaintiff and his fellow employees would then have to walk to his assigned work station and talk to the employee from the previous shift whom he was relieving during a shift changeover. The two would talk about the ongoing work, and work conditions. Plaintiff and fellow employees would then have to report for a shift beginning meeting run by a supervisor. Typically, these meetings occurred at the official scheduled shift start. It was only at this official, scheduled shift start time that Defendant would begin paying employees at an hourly rate of pay. Plaintiff is pursuing, for himself and all similarly situated, any and all work time spent in shift changeover and meeting time with the employee on the prior shift.

16. As described in the paragraph above, Plaintiff and similarly situated coworkers would work, but would not be paid wages for significant minutes and hours each week. In almost all weeks, these unpaid minutes and hours unpaid overtime hours of work that should have been paid at an overtime rate of pay.

17. Defendant does not pay its employees' hourly-paid wages based upon actual employee time worked and based upon Defendant's own records.

18. Based upon its long-standing policy and practice of paying only for officially scheduled work hours, Defendant has been systematically underpaying its employees significant sums of wages and overtime compensation on a daily basis. The aggregate sum of unpaid wages for all of Defendant's Indiana employees based upon Defendant's non-neutral and self-serving wage scheme is very substantial on a daily, weekly and annual basis.

19. Pursuant to its systematic, class-wide practices, Defendant is not compensating its hourly-paid employees for all time worked and recorded on a continuous work day basis.

20. Defendant intentionally and knowingly violated its employees' rights to earned wages and earned overtime compensation through Defendant's illegal and non-neutral wage scheme (paying for only scheduled work hours rather than actual hours worked).

21. By way of this Complaint, Plaintiff seeks for himself and all other similarly situated hourly-paid employees all wages, all overtime compensation, liquidated damages, statutory damages, statutory penalties and all damages owed. Additionally, Plaintiff seeks payment of his attorney's fees, costs and expenses. Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA.

**Regular Rate Facts**

22. Throughout his employment with Defendant, Plaintiff was a non-exempt employee who was compensated by Defendant on an hourly-paid basis. At the time of his termination, Plaintiff's base hourly rate of pay was $50.47 per hour. During his employment with Defendant, Plaintiff regularly worked significant overtime hours (in excess of forty hours in a seven day work week).

23. When Defendant paid Plaintiff overtime compensation, it failed to include all wages in Plaintiff's regular rate of $16.23 per work shift in a category Defendant called "meal allowance." This "meal allowance" was earned as a wage for working that shift. Specifically, the "meal allowance" was not reimbursement to an employee for the purchase of a meal, nor was the "meal allowance" based upon whether or not the employee actually took a meal break. Failing to include this "meal allowance" wage in Plaintiff's regular rate of pay resulted in Defendant's failure to pay Plaintiff his overtime wages at his full overtime rate of pay. As an example, Defendant failed to include this $16.23 "meal allowance" in Plaintiff's regular rate of pay for 8.0 hours of overtime work Plaintiff did during the pay period between October 18, 2023 and

October 31, 2023. By failing to include this “meal allowance” wage in the regular rate of pay, Plaintiff lost between $15.00 to $20.00 in overtime compensation in just this one pay period.

24. Defendant’s failure to include earned categories of wages it “meal allowance” in Plaintiff’s and all of her similarly situated coworkers’ regular rates of pay, resulted in the underpayment of Plaintiff and his similarly situated coworkers’ overtime compensation in corresponding weeks, causing systematic and class-wide violations of the FLSA.

25. Throughout most of his last three years of employment with Defendant, Plaintiff was paid additional, earned wages in this category Defendant called “meal allowance.” This “meal allowance” wage was promised before the work was performed, was not a discretionary payment, and was definitely a wage paid to induce Plaintiff and other similarly situated employees to work more steadily and efficiently, and was certainly a wage paid as consideration for certain specific employee behavior, to wit, working shifts. This “meal allowance” wage was a lesser component of Plaintiff’s compensation.

26. Defendant did not include Plaintiff’s “meal allowance” wage in its computation of Plaintiff’s overtime wages. This same failure was true for every other of Defendant’s employees paid in the category called “meal allowance.” This failure to include “meal allowances” in overtime compensation rates will be readily seen in the pay stubs Defendant issued to Plaintiff and Defendant’s other hourly paid employees.

27. This adjustment to his regular rate and his corresponding overtime rate should have been made every week Plaintiff worked overtime hours and was also paid one or more “meal allowance.” Defendant’s failure to include the “meal allowance” wages in the overtime premium calculation cost Plaintiff and every similarly situated coworker with Defendant overtime compensation on a regular basis. While this one week amount may seem small, this

failure to pay overtime in full occurred over many weeks in many years and caused Plaintiff and his coworkers to lose significant overtime wages.

28. Defendant has created a policy and practice whereby it significantly underpays its non-exempt, hourly paid employees overtime compensation by failing to properly include wages Defendant calls “meal allowance" in regular rates of pay and by failing to properly calculate overtime hours and overtime rates of pay required by the FLSA.

29. Similarly, when Defendant paid Plaintiff overtime compensation in a week in which Defendant also paid wages it called “ratification bonus,” it failed to include all wages in Plaintiff’s regular rate of pay.

30. Defendant’s failure to include earned categories of wages it called “ratification bonus” in Plaintiff’s and all of her similarly situated coworkers’ regular rates of pay, resulted in the underpayment of Plaintiff and his similarly situated coworkers’ overtime compensation in corresponding weeks, causing systematic and class-wide violations of the FLSA.

31. Allocated over a four year basis, Plaintiff was paid additional, earned wages in this category Defendant called “ratification bonus.” This “ratification bonus” wage was promised before the work was performed, was not a discretionary payment, and was definitely a wage paid to induce Plaintiff and other similarly situated employees to work more steadily and efficiently, and was certainly a wage paid as consideration for certain specific employee behavior, to wit, working shifts after ratifying a collective bargaining agreement. This “ratification bonus” wage was a lesser component of Plaintiff’s compensation.

32. Defendant did not include Plaintiff’s “ratification bonus” wage in its computation of Plaintiff’s overtime wages. This same failure was true for every other of Defendant’s employees paid in the category called “ratification bonus.” This failure to include “ratification

bonus" wages in overtime compensation rates will be readily seen in the pay stubs Defendant issued to Plaintiff and Defendant's other hourly paid employees.

33. Defendant has created a policy and practice whereby it significantly underpays its non-exempt, hourly paid employees overtime compensation by failing to properly include wages Defendant calls "ratification bonus" in regular rates of pay and by failing to properly calculate overtime hours and overtime rates of pay required by the FLSA. When Defendant paid Plaintiff overtime compensation, it failed to include all wages in Plaintiff's regular rate of $16.23 per work shift in a category Defendant called "meal allowance." This "meal allowance" was earned as a wage for working that shift. Specifically, the "meal allowance" was not reimbursement to an employee for the purchase of a meal, nor was the "meal allowance" based upon whether or not the employee actually took a meal break. Failing to include this "meal allowance" wage in Plaintiff's regular rate of pay resulted in Defendant's failure to pay Plaintiff his overtime wages at his full overtime rate of pay. As an example, Defendant failed to include this $16.23 "meal allowance" in Plaintiff's regular rate of pay for 8.0 hours of overtime work Plaintiff did during the pay period between October 18, 2023 and October 31, 2023. By failing to include this "meal allowance" wage in the regular rate of pay, Plaintiff lost between $15.00 to $20.00 in overtime compensation in just this one pay period.

34. Additionally, in at least one pay period per year, including, as an example, Plaintiff's pay check dated March 3, 2023, Defendant significantly underpaid overtime to Plaintiff and all his similarly situated coworkers by paying overtime hours of work at a rate Defendant called "double time" that was actually far less than the rate of overtime pay Defendant owed by paying at one and one half of the regular rate of pay Defendant owed for the two weeks in that pay period. As a specific example, on Plaintiff's pay stub dated March 3, 2023, covering

the two week pay period from February 8, 2023 to February 21, 2023, Plaintiff worked 49 hours of overtime. Plaintiff was also paid "Annual Incentive" compensation in the sum of $11,463.19 which was described as covering the "dates" from February 8, 2023 to February 21, 2023. This annual incentive compensation was figured in to Plaintiff's regular rate for purpose of paying ordinary overtime at 1.5 times his regular rate. For 4 of his overtime hours described as "OT-Cur-T1/2" Defendant paid Plaintiff's ordinary overtime hours at the overtime rate of $115.235 per hour. However, for Plaintiff's other overtime hours in the category labeled "OT-Cur-Double" Plaintiff was only paid his 45 additional hours of overtime work at a rate of $100.94 per overtime hour, an hourly overtime underpayment of at least $14.295 per overtime hour and a loss of $643.275 in overtime compensation for that one pay period. (Apparently, rather than pay overtime at the full regular rate of $115.235 per overtime hour, Defendant paid at a rate that it called "double time," but that rate was only 2 times Plaintiff's base rate of pay at $50.47 per hour. With the FLSA's presumptive liquidated damages, Plaintiff is owed FLSA damages of at least $1,286.55 for this single pay period.

35. In at least one pay period each calendar year, Plaintiff and his similarly situated coworkers were significantly underpaid in this same way. Based on the manner Defendant factored "annual incentive" into its employees' regular rate of pay, the overtime payments Defendant called "double time" were payments of overtime hours of work at a rate of pay that was far less than the required ordinary one and one half times ordinary regular rate under the FLSA.

36. Each year, Plaintiff and his similarly situated coworkers were paid additional, earned wages in this category Defendant called "annual incentive." This "annual incentive" wage was promised before the work was performed, was not a discretionary payment, and was

definitely a wage paid to induce Plaintiff and other similarly situated employees to work more steadily and efficiently, and was certainly a wage paid as consideration for certain specific employee behavior, to wit, working shifts. This "annual incentive" wage was a lesser component of Plaintiff's compensation.

37. Defendant has created a policy and practice whereby it significantly underpays its non-exempt, hourly paid employees overtime compensation by failing to properly pay overtime hours at a full, ordinary one and one half times a regular rate that includes "annual incentive" wages, but instead underpays overtime at a rate Defendant calls "double time." In doing so, Defendant is failing to properly calculate overtime hours and overtime rates of pay required by the FLSA.

38. Based upon its long-standing policy and practice of improperly calculating overtime compensation, Defendant has been systematically underpaying its non-exempt, hourly paid employees significant sums of overtime wages on a weekly basis. The aggregate sum of unpaid overtime for all of Defendant's hourly employees is very substantial on a weekly and on an annual basis.

39. Based upon information and belief, particularly when including employee turnover, Plaintiff estimates that Defendant applied its unlawful method of calculating and paying employees for overtime hours of work in a manner that affects thousands upon thousands of employees over a three-year period.

40. Defendant has intentionally, knowingly, with reckless disregard and systematically violated Plaintiff's and his similarly situated coworkers' rights to earned overtime through Defendant's unlawful overtime calculation and payment policies.

**COLLECTIVE ACTION ALLEGATIONS**

41. Plaintiff bring this action on his own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other similarly situated persons who have been, are being, or will be, adversely affected by Defendant's unlawful conduct.

42. The class that Plaintiff seeks to represent and for whom Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiff himself is a member, is composed of and defined as follows:

> **All current and former non-exempt, hourly paid employees of NIPSCO who work or worked for NIPSCO in a bargaining unit covered by the terms of the April 1, 2022 collective bargaining agreement between NIPSCO and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC Local Union No. 12775 at any time from August 20, 2022 to the present.**

43. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA. In addition to Plaintiff, numerous current and former employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiff is representative of those other employees and are acting on behalf of their interests as well as his own in bringing this action.

44. These similarly situated employees are known to Defendant and are readily identifiable through Defendant's payroll records. These individuals may readily be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

**COUNT ONE**
**(FLSA Overtime Violations)**

45. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

46. Plaintiff and other similarly situated employees were not paid for all hours worked and known to Defendant as a result of Defendant's series of decisions to treat certain work time, including shift changeover shift relief meetings with coworkers on outgoing shifts, along with Defendant's failure to keep accurate records. Defendant failed to pay hourly wages for all work on a continuous work day basis, particularly as it was a result of Defendant's policy and practice of refusing to pay for all mandatory work time spent performing required tasks (e.g., time spent meeting with and relieving predecessor employee on a shift, etc...).

47. Plaintiff and other similarly situated employees regularly worked more than 40 hours per workweek for Defendant.

48. Defendant's practice and policy of not paying Plaintiff and other similarly situated employees for work time recorded on Defendant's badge swipe system and time spent prior to official scheduled work start times resulted in Defendant's failure to pay Plaintiff and other similarly situated employees overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek, in violation of the FLSA, 29 U.S.C. §§ 201-219, 29 C.F.R. § 785.24.

49. Defendant further committed overtime violations by failing to pay overtime at the full regular rate for each pay period in amounts that were equal to one and one half times Plaintiff and other similarly situated coworkers' full regular rates. This included overtime violations in weeks employees were paid "annual incentive," "meal allowances" and "ratification bonuses."

50. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated provisions of the FLSA.

51. As a result of Defendant's practices and policies, Plaintiff and other similarly situated employees have been damaged in that they have not received overtime wages due to them pursuant to the FLSA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all persons similarly situated, pray that this Honorable Court:

A. Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly situated persons informing them of this action and enabling them to opt-in;

B. Enter judgment against Defendant and in favor of Plaintiff and the Opt-Ins who join this case pursuant to the FLSA;

C. Award Plaintiff and the putative class actual damages for unpaid wages;

D. Award liquidated damages to the maximum amount permitted by applicable law (100% under the FLSA);

E. Award Plaintiff and the Opt-In Class all liquidated damages, statutory damages, attorney's fees, costs and expenses for FLSA violations;

F. Award Plaintiff and the putative class further and additional relief as this Court deems just and proper.

Respectfully submitted,

/s/Robert P. Kondras Jr.
Robert P. Kondras, Jr. (18038-84)
HASSLER KONDRAS MILLER LLP
100 Cherry St.
Terre Haute, IN 47807
Telephone: 812-232-9691
Facsimile: 812-234-2881
Email: kondras@hkmlawfirm.com

Hans A. Nilges (0076017)
7034 Braucher St. NW, Suite B
North Canton, OH 44720
Telephone: 330-470-4428
Facsimile: 330-754-1430
hans@ohlaborlaw.com

Robi J. Baishnab (0086195)
1360 E. 9th St., Suite 808
Cleveland, OH 44114
Telephone: 216-230-2955
Facsimile: 330-754-1430
rbaishnab@ohlaborlaw.com

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2025, a copy of the foregoing *First Amended Complaint* was filed electronically. Service of this filing will be made on all ECF-registered counsel at the following:

Daniel A. Kaplan
dkaplan@foley.com

McKenzie L. Ahmet
mahmet@foley.com

/s/Robert P. Kondras Jr.
Robert P. Kondras, Jr.